UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STATE OF NEW YORK, by and through
NEW YORK STATE OFFICE OF CHILDREN
AND FAMILY SERVICES,

                              Plaintiff,

  -against-                                1:06-CV-1272
                                             (LEK/DRH)
UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES' ADMINISTRATION
FOR CHILDREN AND FAMILIES and MIKE
LEAVITT, Secretary of the Department of Health
and Human Services,

                              Defendants.
_____

## MEMORANDUM-DECISION AND ORDER[1]

       This case concerns federal reimbursement for state expenditures in placing and maintaining children in foster homes under Title IV-E of the Social Security Act, 42 U.S.C. §§ 670 *et seq*. New York ("New York" or "Plaintiff"), through its State Office of Children and Family Services, seeks relief from the United States Department of Health and Human Services' Administration for Children and Families' ("ACF" or "Defendant") refusal to provide reimbursement for expenses New York incurred placing and maintaining children in foster care. Complaint (Dkt. No. 1) at ¶ 1. Specifically, New York seeks judicial review of two administrative decisions stemming from an audit of New York's Title IV-E foster care program.

---

[1] For printed publication by the Federal Reporters.

1

**I. Factual Background**

In April 2003, ACF reviewed eighty (80) randomly selected cases, examining the payments and expenses claimed by New York's Office of Children and Family Services for the period from April 2002 through September 2002. Complaint (Dkt. No. 1) at ¶¶ 38-39. From this primary review, ACF determined that thirty-one (31) of the eighty cases failed to meet Title IV-E eligibility guidelines. Id. at ¶ 39. Ten of these cases were determined to be ineligible because New York had failed to obtain judicial determinations that reasonable efforts had been made to finalize the children's permanency plans.[2] Id. Because of this determination, ACF disallowed reimbursement for the maintenance and administrative costs associated with those cases, comprising approximately $44,000 and $17,000 respectively. Id. at 45. Additionally, as a result of this primary review, ACF disallowed reimbursement for the administrative costs for all the ineligible cases,[3] totaling $258,702.[4]

A.   Procedural History

New York appealed ACF's disallowance decisions to the Departmental Appeals Board ("DAB"). Complaint (Dkt. No. 1) at ¶ 50. Decision 1949 ("DAB 1949"), issued on October 28,

---

[2] A foster child's "permanency plan" is the goal for that child, in terms of a permanent placement. Examples of permanency plans are adoption and return to a parent's home. 42 U.S.C. § 675(1)(5)(c). A child's permanency plan is determined or reviewed every twelve months the child is in foster care at a judicial hearing entitled a "permanency hearing." Id. Under Title IV-E, states must make "reasonable efforts" to identify a permanent placement for each foster child, if they are not returning home, and move towards achieving that placement, whether it be returning home or not. 42 U.S.C. § 671(15)(c).

[3] The eligibility issues were resolved for two of the thirty one cases, leaving twenty-nine (29) ineligible cases, for which administrative costs were denied.

[4] This amount includes the $16,968 of administrative costs for the ten cases ineligible due to no judicial determination of reasonable efforts.

2004, affirmed the disallowance of administrative costs over New York's arguments that the disallowance was an improper result of a primary, as opposed to secondary, review of Title IV-E eligibility and that the calculation of the disallowance was improper. Id. at ¶¶ 46-48, 51-54. Decision 1984 ("DAB 1984"), issued on July 1, 2005, affirmed the disallowance of both administrative and maintenance costs of the ten cases without findings of reasonable efforts to finalize the permanency plan. Id. at ¶ 63. In so ruling, the DAB rejected New York's argument that the regulation relied on by ACF in disallowing the costs of those ten cases, 45 C.F.R. § 1356.21(b)(2) was invalid, in that it conflicted with Title IV-E of the Social Security Act. Id. at 64.

## II. Discussion

A.   Legal Standard for Motion to Dismiss

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12 (b)(6) of the *Federal Rules of Civil Procedure*, a court must accept all factual allegations in the complaint as true and make all reasonable inferences in the plaintiff's favor. Scutti Enters. v. Park Place Entm't Corp., 332 F.3d 211, 214 (2d Cir. 2003). A court cannot dismiss a complaint unless "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." Id. (internal quotations omitted).

B.   DAB 1949

Plaintiff seeks to overturn DAB 1949 on the grounds that the decision was arbitrary and capricious and otherwise not in accordance with law. Complaint (Dkt. No. 1) at ¶¶ 61, 71. Plaintiff argues that 45 C.F.R. § 1356.71(j)(2), which describes the computation of disallowance amounts when States are not in compliance, cannot be reasonably interpreted to allow for the disallowances

imposed.

The standard with which a court reviews administrative actions is laid out in section 706 of the Administrative Procedures Act. 5 U.S.C. § 706. Under that standard, a reviewing court must decide all issues of law *de novo* and "hold unlawful and set aside agency action, findings, and conclusions found to be: arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

An agency must adhere to its own regulations. Riverkeeper, Inc v. EPA, 475 F.3d 83, 117 (2d Cir. 2007) (quoting Reuters Ltd. v. FCC, 781 F.2d 946, 950 (D.C. Cir. 1986)). If there is any ambiguity as to the meaning of a regulation, an agency's interpretation is entitled to deference. Id.; Udall v. Tallman, 380 U.S. 1, 16-17 (1965). However, an agency interpretation will not be given controlling weight if it conflicts with the plain meaning of the regulation. 380 U.S. at 16-17.

The relevant text of the regulation in question is:

"States which are found to be in noncompliance during the primary review will have disallowances determined on the basis of individual cases reviewed and found to be in error....A secondary review will be conducted no later than during the AFCARS reporting period which immediately follows the program improvement plan completion date on a sample of 150 cases drawn from the State's most recent AFCARS data. If both the case ineligibility and dollar error rates exceed 10 percent, the State is not in compliance and an additional disallowance will be determined based on extrapolation from the sample to the universe of claims paid for the duration of the AFCARS reporting period (i.e., all title IV-E funds expended for a case during the quarter(s) that case is ineligible, including administrative costs)."

45 C.F.R. § 1356.71(j)(2)

ACF interprets this statute to allow the disallowance of administrative costs for cases found to be ineligible during primary *or* secondary review. Complaint (Dkt. No. 1) at ¶ 51; Deft's Mem. of Law (Dkt. No. 6) at 21. Plaintiff asserts that there is no ambiguity in this text and that the plain

meaning does not support ACF's interpretation. Plntf's Mem. of Law (Dkt. No. 9) at 21-22.

Plaintiff argues that the regulation specifies the disallowance of administrative costs after a second review and, through its silence on the issue for primary review, does not permit such a disallowance after a primary review. Plntf's Mem. of Law (Dkt. No. 9) at 21. Because, Plaintiff argues, New York has a statutory right to payment for the costs of the foster care program, limitation of such a statutory right must be explicit. Id. at 20-21(referencing 42 U.S.C § 674(a)(3)). Defendant disputes that New York has a statutory right to payment for costs associated with ineligible cases and argues that allowing such a payment would itself be contrary to statutory directive. Deft's Mem. of Law (Dkt. No. 6) at 19. See 42 U.S.C. § 674.

Plaintiff's interpretation of the regulation, "that only maintenance payments made on behalf of an individual child found ineligible can be disallowed," Dkt. No. 9 at 22, is not compelled by the plain meaning of the text, as Plaintiff suggests. The text of the regulation is ambiguous - there is no clear statement either way about the issue at hand. AFC's interpretation of this ambiguous text is reasonable, especially considering the preamble, published contemporaneously with the final rule, which describes the administrative costs of all ineligible cases as subject to disallowance, without regard to primary or secondary review. See Deft's Mem. of Law (Dkt. No. 6) at 21; 65 Fed. Reg. 4020, 4073 (Jan. 25, 2000). Even if Plaintiff's interpretation was more convincing than ACF's, given legislative history and statutory context, this Court does not have the discretion to choose among competing interpretations of ambiguous text. Unless ACF's interpretation is clearly erroneous or conflicts with the plain meaning of the statute, that interpretation must be given controlling weight. Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994). As noted, ACF's interpretation of this regulation is valid and thus, controls.

Plaintiff's argument that states have a statutory right to be reimbursed for foster care costs, irrespective of Title IV-E eligibility, also cannot trump ACF's interpretation of the regulation. Section 674 of Title 42 of the United States Code states the terms in which states are to be reimbursed for foster care expenditures, noting that states are "entitled" to such payments. 42 U.S.C. § 674(a). Plaintiff acknowledges that this entitlement is limited; for example, states' inability to be reimbursed for maintenance payments for children ineligible under Title IV limits this entitlement. Plntf's Mem. of Law (Dkt. No. 9) at 21-22; 45 C.F.R. § 1356.71(j)(2). Plaintiff's argument reduces to a claim that limitations to the states' entitlement must go through a notice and comment period. Plntf's Mem. of Law (Dkt. No. 9) at 22. Plaintiff does not even argue that section 1356.71 did not go through a notice and comment period; instead, the argument is that ACF's interpretation of section 1356.71 is so inconsistent with the regulation text as to constitute a change, requiring notice and comment. However, it has already been decided above that ACF's interpretation of section 1356.71 is consistent with the text. Accordingly, the limitations on state reimbursement have gone through the formal notice and comment process, so Plaintiff's argument that the process is necessary is irrelevant.

Plaintiff also objects to ACF's calculation of the administrative costs disallowed. Complaint (Dkt. No. 1) at ¶¶ 46-48. For the purposes of this Motion, the Court must accept Plaintiff's assertion that the disallowance was calculated "by averaging the aggregate of the state's yearly administrative costs to all children determined eligible for the Title IV-E program and then determining a monthly average per child." Complaint (Dkt. No. 1) at ¶ 46. Plaintiff argues that this method of calculation is clearly contrary to the text of the regulation, which states that disallowances will be "determined on the basis of individual cases reviewed and found to be in

6

error." 45 C.F.R. § 1356.71(j)(2). Administrative costs claimed for federal reimbursement are based not on specific individual cases, but on "a cost allocation plan that uses the results of Random Moment Samples of the social services districts." Complaint (Dkt. No. 1) at ¶ 56. The only payments claimed for reimbursement on the basis of individual children are foster care maintenance payments. Id. at ¶ 60. The omission of the word "average" from the regulation is crucial, according to Plaintiff, because it indicates that ACF's practice of refusing reimbursement based on an estimate of the average administrative cost per child per month was not intended by Congress. Id.

Plaintiff's statutory interpretation argument is convincing. However, ACF's interpretation of the regulation also comports with the plain meaning of the statute: it is not unreasonable that an average of the administrative costs per child be deducted, even if administrative costs are not generally calculated per child. Even assuming that Plaintiff's interpretation is more convincing, ACF's interpretation must receive deference. "This broad deference is all the more warranted when, as here, the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy." Thomas Jefferson Univ, 512 U.S. at 512 (1994) (internal quotation and citation omitted). For the foregoing reasons, ACF's interpretations of the statute in question control and DAB 1949 is affirmed.

  C. DAB 1984

Plaintiff seeks to overturn DAB number 1984 on the grounds that the decision was arbitrary and capricious and that the regulation justifying that decision, Code of Federal Regulations, Title 45, Section 1356.21, is invalid. Plntf's Mem. of Law (Dkt. No. 9) at 1. According to Plaintiff, Section 1356.21 is invalid because it created a requirement for Title IV-E eligibility beyond that intended by

Congress.

### 1. Standard for Reviewing Agency Regulation

In <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, the Supreme Court laid out the proper analysis for a challenge to an administrative agency's regulation. 467 U.S. 837, 842-45 (1984). Under the <u>Chevron</u> framework, an agency's interpretation of a statute, as reflected in its regulation, is given deference "if the interpretation is (1) not contrary to the clear intent of Congress and (2) reasonable." <u>Chauffeur's Training Sch., Inc. v. Spellings</u>, 478 F.3d 117, 124-25 (2d Cir. 2007). "The 'power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.' When an agency fills such a "gap" reasonably, and in accordance with other applicable (e.g., procedural) requirements, the courts accept the result as legally binding." <u>Long Island Care at Home, Ltd. v. Coke</u>, 127 S.Ct. 2339, 2345-2346 (2007) (quoting <u>Chevron</u>, 467 U.S. at 843-4) (other citations omitted).

The first step of <u>Chevron</u> analysis is to determine whether Congress' intent on the specific issue is clear. <u>Chauffer's Training</u>, 478 F.3d at 124-5. If Congress has made its intent clear in the statutory text, the inquiry ends there and Congress' intent must be given effect. <u>Nat'l Ass'n of Home Builders v. Defenders of Wildlife</u>, Nos. 06-340, 06-549, 2007 WL 1801745, at *12 (U.S., June 25, 2007). The statutory provision at issue should be analyzed in the context of the larger statutory scheme, not in isolation, in evaluating "clear congressional intent." <u>Id.</u> However, if the statute is ambiguous or silent on the specific issue, the Court must determine if the regulation is based on a permissible construction of the statute. <u>Id.</u> (quoting <u>Chevron</u>, 467 U.S. at 842-43). This determination is deferential; the Supreme Court has ruled that "ambiguities in a statute within an

agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion." Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Serv., 545 U.S. 967, 980 (2005). Accordingly, if a statute is ambiguous and the administering agency's interpretations of that statute are reasonable, a federal court must accept the agency's construction. Id.

        2.        The Regulation in Context

In 1997, Congress passed ASFA, amending the Adoption Assistance and Child Welfare Act of 1980, Public Law No. 96-272 (Child Welfare Act), in part to reduce the large number of children in state foster care and the average length of time a child spends in care, before returning home, being adopted or aging out of the system. H. R. REP. NO. 105-77, 1997 U.S.C.C.A.N. 2739, 2741 (April 28, 1997) (identifying as a problem, to be addressed by ASFA, "that States often move slowly in moving children toward permanent settings"). ASFA reflects an acknowledgment that states were not doing enough to move children out of care and that this was both expensive and detrimental to the children in care. Id. Accordingly, Congress sought to alter the federal funding of state foster care systems so that states would have a financial incentive to move children towards permanent placements. 1997 U.S.C.C.A.N. 2739, 2741. Another motivation behind the Act was encouraging the adoption of children in foster care. 1997 U.S.C.C.A.N. at 2740.

As part of ASFA's statutory changes, Congress altered Section 671(a)(15) of Title 42 of the United States Code, describing Title IV-E eligibility review for state foster care plans. Prior to 1997, section 671(a)(15) read "in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home." 42 U.S.C. § 671(a)(15) (1983). The 1997 changes expanded section 671(a)(15) to include requirements for reasonable

9

efforts when a child's permanency plan was not to return home, as well as other situations not addressed in the earlier statute. See 42 U.S.C. § 671(a)(15). Of particular note is subpart (C), which states:

> "if continuation of reasonable efforts [to make it possible for a child to return home] is determined to be inconsistent with the permanency plan for the child, reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan...and to complete whatever steps are necessary to finalize the permanent placement of the child."

42 U.S.C. § 671(a)(15)(C).

These changes are relevant because section 671(a)(15) is referenced in section 672 of the same title of the United States Code, which "requires participating States to make foster care maintenance payments on behalf of eligible children ("qualifying children") and lists the criteria for a child's eligibility." Complaint (Dkt. No. 1) at ¶14. Section 672(a)(1) notes that for children to be eligible, there must have been "a judicial determination to the effect that [continued residence in the parents' home] would be contrary to the welfare of such child and that reasonable efforts of the type described in section 671(a)(15) of this title for a child have been made." 42 U.S.C. § 672(a)(1) (1983).

In interpreting and implementing these changes, AFC proposed a regulation requiring judicial determinations that the state made reasonable efforts both to prevent removal from the child's home and to finalize the child's permanency plan before the child can be eligible for Title IV-E.[5]  45 C.F.R § 1356.21(b)(1)-(2); Complaint (Dkt. No. 1) at ¶ 24. During the proposed rule's

---

[5] The determination of reasonable efforts preventing removal must be made within 60 days of removal or else the child is ineligible under Title IV-E for the duration of that stay in foster care. The determination relating to finalizing a permanency plan must be made within twelve (12) months of the child's entry into foster care, and once every twelve months thereafter. Otherwise, the child is ineligible until the determination is made. 45 C.F.R. § 1356.21(b)(1)-(2).

notice and comment period, OCFS filed an objection, asserting, as Plaintiff does here, that ACF has no statutory authority to tie Title IV-E eligibility to a judicial determination that reasonable efforts were made to finalize a permanency plan. Complaint (Dkt. No. 1) at ¶ 27-28. ACF responded to this objection, explaining that it interpreted section 672(a)(1) to require a judicial determination of reasonable efforts made towards a permanency plan. Title IV-E Foster Care Eligibility Reviews and Child and Family Services State Plan Reviews, 65 Fed. Reg. 4020-01 at 4051.

        3.        Application of Chevron Analysis to Regulation

New York argues that ACF's interpretation of section 672(a)(i) is contrary to the clear meaning of the statute and, thus, is invalid. Complaint (Dkt. No. 1) at ¶ 73.

When Congress changed Section 671(a)(15) in 1997, no corresponding changes were made to Section 672(a)(1). Accordingly, Section 672(a)(1) still refers to reasonable efforts of the "type" described in section 671(a)(15), as opposed to a more inclusive "types."[6] New York argues that this language is crucial, in that it indicates that Congress did not intend to incorporate all of section 671(a)(15) into section 672(a)(1) by reference and did not intend to require judicial determinations of reasonable efforts of *each* type described in section 672(a)(15) for a child to be deemed "eligible." Complaint (Dkt. No. 1) at ¶17, 20-21.

        a.        First Step of Chevron Analysis: Ambiguity

The first step of Chevron analysis is to determine if the Congressional intent behind section 672(a)(1) is clear. The parties each argue that Congress' intent is clear, although they view the

---

[6] The version of 42 U.S.C. § 672 referred to in this opinion is not the most current. This section was amended by the Deficit Reduction Act of 2005, although the changes do not substantively alter the issues before the Court. The version referred to in this opinion, unless noted otherwise, is the version prior to that amendment, put into effect in 1997. The provision under discussion, §672(a)(1), is § 672(a)(2)(A)(ii) in the current version.

supposed clarity in contradictory ways.  Congress' intent is far from clear; there is explicit ambiguity in the text: section 672(a)(1) uses the singular term "the type described" to refer to a statute describing numerous types.  42 U.S.C § 672 (a)(1).  Defendant argues that, because section 672(a)(1)'s reference does not distinguish between the subparts of section 671(a)(15), it must incorporate the entirely of section 671(a)(15).  In contrast, Plaintiff argues that, because Congress failed to update section 672(a)(1) to correspond to section 671(a)(15), the program eligibility requirements are not expanded to incorporate all of 671(a)(15).  Instead, Plaintiff urges, the pre-ASFA eligibility guidelines remain in place.  Deft's Reply (Dkt. No. 12) at 2.  Neither of these readings is sufficiently convincing (or, said differently, neither fails to convince sufficiently) so that Congress' intent can be said to be clear and the fundamental ambiguity of the text is resolved.

      b.      Second Step of <u>Chevron</u> Analysis: Reasonableness

Under the second step of <u>Chevron</u> analysis, if ACF's interpretation of section 672 (a)(1) is permissible, it is upheld, because, as noted above, statutory ambiguities are understood to be delegated by Congress to the implementing agency.  Additionally, AFC's expertise and responsibilities for formulating policy entitle it to judicial deference in the implementation of a statute within its jurisdiction.  Given this standard, AFC's interpretation of section 672(a)(1), as found in 45 C.F.R. § 1356.21, must be upheld.

Plaintiff argues that AFC's interpretation is unreasonable, and thus not deserving of deference.  Plaintiff notes that a consequence of  Title IV-E ineligibility, beyond the unavailability of federal reimbursement, is that the ineligible children lose their benefits under the Medicaid program.  Plntf's Mem. of Law (Dkt. No. 9) at 6.  This does not comport, according to Plaintiff, with the stated purpose of ASFA to make "the child's health and safety...the paramount concern."

12

Id. at 3; 42 U.S.C. § 671(a)(15)(A).  Plaintiff also points out a different system created by Congress to review States' efforts to achieve permanency for children, the Child and Family Services Review.  Plntf's Mem. of Law (Dkt. No. 9) at 5.  Because that review also carries the possibility of financial sanctions, Plaintiff argues that it is unreasonable to infer an additional penalty (the loss of Title IV-E eligibility and federal reimbursement) for the same omission.  Id.

However, the statute's context makes clear that findings of reasonable efforts prior to removal and with regard to reunification are conditions of eligibility, with the consequent financial repercussions.  See 1997 U.S.C.C.A.N. 2739, 2743; 42 U.S.C. § 672(a)(1)(1983); 42 U.S.C. § 671(a)(15)(A)-(B).  Defendant emphasizes that Congress did not distinguish between reasonable efforts in those areas and the reasonable efforts as to permanency in the text of the statute.  Deft's Reply (Dkt. No. 12) at 4.  Considering this textual treatment, it is logical to interpret the statute as treating all reasonable efforts determinations equally, despite the potential for duplicative sanctions.  ASFA's changes to Title IV-E are intended to allow states to "move more efficiently towards terminating parental rights and placing children for adoption."  1997 U.S.C.C.A.N. 2739, 2740.  With this intention in mind, it does not make sense to assume that Congress wanted to prioritize reunification efforts over adoption efforts, as Plaintiff's textual reading assumes.  The issue Plaintiff identifies with regard to children's Medicaid eligibility does raise concerns; this Court does not treat such consequences lightly.  However, the standard of review requires this Court to uphold ACF's interpretation if it is a reasonable interpretation of Congress' intent.  As ASFA was intended to save money, provide a financial incentive for states to achieve permanency for foster children sooner and increase adoptions out of foster care, ACF's interpretation of sections 671 and 672 certainly meets the minimal threshold of reasonableness.

For the forgoing reasons, 45 C.F.R. § 1356.21(b)(2) is valid and DAB 1984, relying on that regulation, is upheld.

### III. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 6) is **GRANTED**; and it is further

**ORDERED**, that the Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:   July 17, 2007
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge